## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ROBYN SLACK**                                 :
                                                :
      **Plaintiff,**                      :
                                                :
  **v.**                                      :   **Case No. _____**
                                                :
                                                :
**WASHINGTON METROPOLITAN**                     :
**AREA TRANSIT AUTHORITY ET AL.**               :
                                                :
     **Defendants.**                   :
_____                 :

### DEFENDANT'S FILING OF PREVIOUS
### FILINGS IN STATE COURT

Defendant Washington Metropolitan Area Transit Authority ("WMATA") hereby submits

the filings previously made by Plaintiff in the Superior Court for the District of Columbia in this

action being removed.

1. Complaint.

2. Summons.

3. Initial Order and Addendum

4. Order of Recusal

These documents constitute all documents known to WMATA related to this case.

Respectfully submitted,

WASHINGTON METROPOLITAN AREA
 TRANSIT AUTHORITY


/s/ Michael K. Guss
Michael K. Guss #465171
Associate General Counsel
600 Fifth Street, N.W.
Washington, D.C. 20001
(202) 962-1468; (202) 962-2550 (fax)
Attorney for Defendant WMATA

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant's Filing of Previous Filings in

State Court was electronically filed this 27th day of January 2016, to:

Bruce A. Fredrickson
Cedar P. Carlton
Geoffrey H. Simpson
WEBSTER & FREDRICKSON, PLLC
1775 K Street, NW
Suite 600
Washington, D.C. 20006

/s/ Michael K. Guss
Michael K. Guss

Filed
D.C. Superior Court
11/16/2015 18:67PM
Clerk of the Court

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBYN SLACK )<br>2106 Rosecroft Blvd )<br>Fort Washington, MD 20744 )<br> )<br>     Plaintiff )<br> )<br>     v. )<br> )<br>WASHINGTON METROPOLITAN TRANSIT )<br>AUTHORITY )<br>600 5th Street, NW )<br>Washington, DC 20001 )<br> )<br>     and )<br> )<br>JUDY MEWBORN )<br>600 5th Street, NW )<br>Washington, DC 20001 )<br> )<br>     Defendants. )<br>——————————————————) | Case No.  2015 CA 008900 B<br><br>Judge |

### COMPLAINT
**(Retaliation pursuant to the District of Columbia Whistleblower Protection Act)**

COMES NOW the Plaintiff Robyn Slack, by and through her attorneys, Webster & Fredrickson, PLLC, for the Complaint in the above-captioned action and states to this Honorable Court as follows:

### INTRODUCTION

1.     This is a civil action brought by Plaintiff Robyn Slack against Defendant Washington Area Metropolitan Transit Authority ("WMATA") under the anti-retaliation provisions of the District of Columbia Whistleblower Protection Act. D.C. Code § 2-223.01, *et seq.*

2.     Plaintiff Slack served WMATA as Capital Program Analyst, whose role entailed monitoring the budget on Federal grants to Defendant WMATA.

3.      Defendant WMATA, through Plaintiff's supervisor Judy Mewborn, ordered Plaintiff Slack to serve as the sole point of contact on a certain program.  Plaintiff Slack stated to Ms. Mewborn and other WMATA supervisors that having one person serve as the sole point of contact would violate internal controls.

4.      As Plaintiff understood, Defendant WMATA is required to maintain adequate internal controls pursuant to laws and regulations associated with receiving grants from the Federal government.

5.      Shortly after Ms. Slack reported the proposed violation of the law, Ms. Mewborn and WMATA engaged in a pattern of retaliation that culminated in the termination of Plaintiff's employment for her having disclosed a violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor and for her refusal to comply with a directive that would violate the law.

## JURISDICTION

6.      The jurisdiction of this Honorable Court is invoked pursuant to D.C. Code § 2-223.03(a).

## PARTIES

7.      Plaintiff Robyn Slack is an adult resident of Fort Washington, Maryland.  Plaintiff Slack first joined WMATA in October 2012 as "Grant Planning Specialist" for the Division of Bus, Department of Bus Planning.  Plaintiff Slack was reclassified, in place, two grades higher, and later promoted two grades higher again, eventually becoming a "Capital Program Analyst" (also known as a Budget Analyst) in WMATA's Division of Rail, Department of Systems Maintenance, Unit of Project Management.  At all times relevant to this Complaint, Plaintiff Slack performed her job effectively and competently.

2

8.     Defendant Washington Metropolitan Area Transit Authority ("WMATA"), created effective February 20, 1967, is an interstate compact agency.  WMATA was an employer for the purposes of D.C. Code §§ 2-223.01, *et seq.*

9.     Defendant Judy Mewborn is an adult employee of WMATA and served as Plaintiff Slack's supervisor in WMATA's Division of Rail, Department of Systems Maintenance, Unit of Project Management.

## FACTS GIVING RISE TO RELIEF

10.     WMATA is a transit authority that receives millions of dollars in grants from the Federal government and receives millions of dollars in funding from the District of Columbia, Maryland, and Virginia pursuant to a Capital Funding Agreement.

11.     WMATA is responsible for managing its programs in compliance with Federal laws, rules and regulations and with the Capital Funding Agreement with the funding jurisdictions.

12.     Federal laws, rules and regulations require that grantees such as WMATA employ internal financial controls to minimize the risk of fraud. *See* FTA Circular 5010.1D and 4220.1F, 49 C.F.R. § 19.20, *et seq.*, and the FTA Master Agreement.  See also 49 U.S.C. § 5301, *et seq.*

13.     The Capital Funding Agreement requires WMATA to follow Generally Accepted Accounting Principles ("GAAP"), which also require the implementation of internal controls.

14.     Proper implementation of internal controls would forbid one person serving as the sole source of contact on a contract, because, among other things, there would be no mechanism to detect errors or to detect fraud.

15.     Plaintiff Slack joined WMATA in 2012 as a "Grant Planning Specialist" for the Division of Bus, Department of Bus Planning.

16.     While initially she had been hired for an administrative position, Plaintiff Slack immediately took on more responsibility.

17.     Plaintiff Slack reported directly to the Director of the Division where she supported five project managers, and was responsible for setting up the TIGER Project.

18.     Because of her excellent work and because she was functioning well above the classification for which she was hired, Plaintiff Slack was promoted/reclassified in October 2013 to a "Grant & CIP Administrator."

19.     Plaintiff Slack continued to provide excellent work for WMATA in this role, receiving an award for service and three letters of recommendation.

20.     In April 2014, Plaintiff Slack earned a promotion to "Capital Program Analyst" (also known as a Budget Analyst) in WMATA's Division of Rail, Department of Systems Maintenance, Unit of Project Management.

21.     In this new position, Plaintiff Slack helped set and monitor the budget for capital programs.

22.     Plaintiff succeeded in this new position, receiving an award for service, and was very well regarded by her co-workers.

23.     Plaintiff Slack received particularly positive feedback from her boss, Judy Mewborn, the Project Manager and Contracting Officer's Technical Representative ("COTR").

24.     Plaintiff Slack was initially consistently praised for her good work.

25.     Plaintiff Slack even trained both her boss, and the Assistant General Superintendent, and the Procurement and Logistics Manager on the accrual process.   This training led to the Division receiving accolades for superior management of the company funding and resources.

4

26.    Ms. Mewborn's attitude towards Plaintiff Slack changed immediately after Plaintiff resisted Mewborn's efforts to have Plaintiff circumvent Federal law and regulations regarding the administration of contracts and reported to others Plaintiff Slack's concern about violating the law.

27.    Plaintiff Slack was ultimately terminated by WMATA and Mewborn because she resisted Mewborn's requests to violate the law and reported the proposed violations of law to Mewborn and other managers.

28.    More specifically, in April 2014, Plaintiff Slack became responsible for WMATA contracts within the Capital Improvement Programs, including CIP0027, CIP0139_09, and CIP0139_P1. In July 2014, her responsibilities increased to also include CIP0139_06 and CIP0108.

29.    On or about July 14, 2014, Judy Mewborn called Plaintiff Slack into a meeting with Albert Dobson, Maintenance Shop Supervisor, and Ricky Hall, another WMATA manager. In this meeting, Mewborn informed Plaintiff Slack that she would be the single point of contact for the CIP0027 Program, as it related to switch machines, parts, and associated warranties (a program with multiple vehicles for the track switch machine contracts and purchase orders) and all purchases of less than $3000 for all aspects of the switch machine, parts, and associated warranties.

30.    When Plaintiff Slack heard Mewborn's proposal, she informed Mewborn, Dobson, and Hall that having her serve as the single point of contact on these contracts would violate internal controls.

31.    When Plaintiff Slack made this comment, Mewborn responded: "so ~~you~~ are you saying you aren't going to do it?"

32.     In response, Plaintiff Slack informed Mewborn and the other participants in the meeting that to serve as the single point of contact on these contract vehicles would violate internal control policies.

33.     Shortly after this meeting, and despite Plaintiff Slack's efforts to decline Mewborn's plan for her, and informing the other managers that Mewborn's plan would violate the law, Mewborn sent an email to the SMNT Department confirming that Plaintiff would serve as the single point of contact.

34.     Placing one person as the single point of contact on contracts and all encumbrances/expenditures violates Federal rules and regulations requiring grantees to follow established internal controls which are designed to prevent fraud and the misuse of funds.

35.     Immediately following the meeting during which she reported (to Mewborn, Dobson, and Williams) that Mewborn's instruction would violate internal controls and Federal rules and regulations, Mewborn's attitude and treatment of Plaintiff Slack changed drastically.

36.     Mewborn commenced efforts to fire Plaintiff from WMATA. Whereas prior to July 14, 2014, Plaintiff Slack had received universally positive feedback, had received support and training, and had been permitted to work an alternative work schedule, everything changed after the July 14, 2014 meeting with Mewborn, Dobson, and Hall.

37.     Within two weeks, July 31, 2014, during a regularly scheduled staff meeting, Mewborn verbally informed Plaintiff Slack that the alternative work schedule was cancelled, effective the next day, August 1, 2014. This schedule had been negotiated and accepted prior to Plaintiff's acceptance of her promotion, and was one of the primary reasons Plaintiff Slack had accepted the position in the Project Maintenance Unit.

38.     Mewborn stated the cancellation of the Alternate Work Schedule was the decision of Mr. Nabb, Assistant General Superintendent of System Maintenance, Rail Division. Mewborn stated that she did not know why the change was made, and if there were questions, to contact Mr. Nabb directly.

39.     Mewborn also denied Plaintiff Slack training without any basis when all of the other employees in the unit, including Mewborn herself, received more than 80 hours, each, of classroom and "on-site," "hands-on," training.

40.     Plaintiff Slack asked to have similar training, but was denied.

41.     On August 28, 2014, Plaintiff Slack attended a pre-scheduled Performance Planning meeting with Mewborn, utilizing the Performance Management Process Form – Managers Version, to identify and discuss the projected "Safety Objective" and "Business Objectives" for the upcoming new fiscal year. This document was e-mailed to Plaintiff Slack prior to the scheduled meeting.

42.     Deviating from WMATA's procedures, Mewborn conducted an evaluation of Plaintiff Slack when there was no basis for her to conduct such an evaluation at that time.

43.     Mewborn, creating grounds for discipline, falsely accused Plaintiff Slack of inappropriately utilizing confidential information. In "Objective 10 (mandatory)," of "Performance Management Process Form – Manager Version," Mewborn stated "Refrain from discussing an individual's personal information with others, or volunteering personal information of anyone including the person to whom you are speaking." This accusation could have seriously damaged Plaintiff's professional reputation as using confidential information for personal gain is serious misconduct for individuals working in the accounting field.

44.     Plaintiff Slack requested evidence to support the accusation. Mewborn accused Plaintiff Slack of combative behavior, stated that a third party needed to be present, and ended the meeting.

45.     On September 5, 2014, Ms. Mewborn held a follow-up meeting as a follow up to the August 28, 2014 meeting. Mewborn presented Plaintiff Slack "Poor Performance and Conduct – Written Warning."

46.     In this memorandum, Mewborn made several false accusations, writing, "Your lack of confidentiality has put our team and information at risk." This false accusation stated that Plaintiff Slack utilized confidential information for personal gain.

47.     Mewborn also falsely stated, "Your conduct is disruptive and unprofessional".

48.     Mewborn implemented a six- month probationary period, effective immediately, retroactive back to April 14, 2014, and the first day of employment, and accepted promotion to Capital Program Analyst, within System Maintenance, Unit of Project Management.  Mewborn cited WMATA Policy Instruction 7.2.1/1 to justify her decision.

49.     Mewborn stated that it was her decision to cancel the Alternative Work Schedule, writing, "Due to the performance concerns, there will be no further discussion of an Alternate Work Schedule, the AWS [Alternate Work Schedule] is denied".

50.     Mewborn changed the lunch period from 30 minutes unpaid, to "(1) hour unpaid lunch period".

51.     Mewborn changed Plaintiff Slack's hours 7:30 am to 4:00 pm.

52.     Mewborn also falsely accused Plaintiff of "disruptive and unprofessional" conduct, alleging she "confronted" a "co-worker" but provided no evidence or specific examples of any such behavior. The memorandum falsely accused Plaintiff Slack of combative behavior

8

and poor performance, and placed her on progressive action. The memorandum made the very serious allegations against Plaintiff Slack (that she had used confidential information for personal gain).

53.     This memorandum stated that it was "official notice" that Plaintiff Slack's job might be terminated if she was "unable to demonstrate and maintain the expected performance level" by October 4, 2014. Yet, Plaintiff performed well for WMATA during that time.

54.     Alan Nabb, Assistant Superintendent of System Maintenance attended the September 5, 2014 meeting.

55.     WMATA Policy/Instruction 7.3.3/1 Section 4.03, provides, "Department Heads/Director must be made aware of, and concur with, all involuntary separation actions and are responsible for appointing, delegating and authorizing a Deciding Official, minimally a senior manager (grade 16 or equivalent) to review and authorize the involuntary separation of an employee."

56.     Plaintiff Slack tried to mediate the September 5, 2014 reprimand memorandum with WMATA.

57.     After mediation failed, on September 16, 2014, Plaintiff Slack filed a formal grievance with WMATA's Human Resources-Employee Relations department.

58.     Human Resources, on September 30, 2014, while accepting some of the false accusations against Plaintiff Slack, determined "The revised memo will not include the breach of confidentiality." It was determined that Plaintiff had not violated WMATA policy, and in fact had not used confidential information for personal gain.

59.     Thus, WMATA itself found that the most serious charge against Plaintiff Slack was unfounded.

60.     Human Resources removed a number of additional (false) allegations Mewborn made in her initial performance memorandum, including allegations that Plaintiff: (1) was easily distracted, (2) had poor Communication, (3) used e-mails poorly, (4) was disruptive and engaged in unprofessional behavior. Human Resources also changed the reason for cancellation of the Alternate Work Schedule. Mewborn had alleged that the Alternate Work Schedule was canceled because of poor performance, but Human Resources found that this was not true.

61.     During an October 1, 2014 meeting with Mewborn and WMATA's HR-Employee Relations, HR informed Plaintiff Slack that the September 5, 2014 memorandum was removed from her permanent personnel file.

62.     During the same October 1, 2014 meeting, Mewborn presented another memorandum to Plaintiff Slack with additional false allegations of poor performance, this time covering the period from April 2014 through October 1, 2015. Mewborn refused to provide evidence to Plaintiff Slack to support new allegations.

63.     Mewborn, despite the fact that some of her previous allegations were found to be unfounded by HR, lengthened the probationary period to end November 12, 2014.

64.     Mewborn called a project meeting November 17, 2014 at 4:30 pm. Mewborn, Level 14, and Ogunsuyi (not a Level 15 or higher as required by WMATA policy), presented Plaintiff with an unsigned Termination of Employment memorandum. Plaintiff requested that a Level 15 or higher WMATA manager sign off on the termination. Mewborn and Ogunsuyi denied Plaintiff Slack's request, and WMATA police escorted Plaintiff Slack out of the building.

65.     On November 17, 2014, after the probationary period had expired (on November 12, 2014), and in violation of numerous WMATA Policy/Instructions, WMATA terminated Plaintiff.

## COUNT I
### (Wrongful Discharge in Violation of the District of Columbia Whistleblower Protection Act,  D.C. Code § 2-223.01, et seq.)

66.     Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-65 of this Complaint with the same force and vigor as if set out here in full.

67.     WMATA is an instrumentality as defined by D.C. Code § 2-223.01(5).

68.     Plaintiff Slack is an employee as defined by D.C. Code § 2-223.01(3).

69.     Plaintiff Slack is also a "whistleblower" as defined in D.C. Code § 2-223.01(10), as she refused to comply with illegal orders as defined by D.C. Code § 2-223.01(4) and made protected disclosures as defined by D.C. Code § 2-223.01(7).

70.     Defendant WMATA was aware of Plaintiff Slack's resistance to comply with its illegal orders and her disclosures.

71.     Defendant WMATA violated D.C. Code § 2-223.02(a) by discharging Plaintiff Slack from employment because of her refusal to comply with one or more illegal orders and for her protected disclosures.

72.     As a direct and proximate result of Defendant WMATA's unlawful discharge of Plaintiff Slack, Plaintiff Slack has suffered loss of income and benefits, emotional harm, humiliation, inconvenience and loss of reputation.

73.     Pursuant to D.C. Code § 2-223.03(a), and as otherwise allowed by law, Plaintiff Slack is entitled to relief and damages, including but not limited to injunction, reinstatement to the same position held before the prohibited personnel action or to an equivalent position, reinstatement of the employee's seniority rights, restoration of lost benefits, back pay, front pay, interest, compensatory damages, punitive damages, reasonable costs, and attorney fees.

## COUNT II
### (Defamation by Judy Mewborn)

74.     Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-65 of this Complaint with the same force and vigor as if set out here in full.

75.     Defendant Mewborn published false statements concerning Plaintiff Slack's job performance and made false allegations concerning Plaintiff's use of confidential information for personal gain.

76.     As a direct and proximate result of Defendant Mewborn's false statements, WMATA terminated Plaintiff Slack's employment.

77.     As a result of the termination of her employment and as a result of the false statements Plaintiff Slack has suffered loss of income and benefits, emotional harm, humiliation, inconvenience and loss of reputation.

78.     As allowed by law, Plaintiff Slack is entitled to relief and damages, back pay, front pay, interest, compensatory damages, and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, the premises considered, Plaintiff Slack respectfully prays that this Honorable Court:

1.     Enter judgment on their behalf against Defendant WMATA on all counts herein;

2.     Award Plaintiff compensatory and other damages;

3.     Award back pay and front pay to Plaintiff;

4.     Award punitive damages to Plaintiff;

5.     Award Plaintiff her court costs, expenses, attorneys' fees, prejudgment interest, and post-judgment interest;

6.     Declare Defendant WMATA's conduct is in violation of D.C. Code § 2-223.03(a);

7.     Grant the Plaintiffs appropriate preliminary and/or permanent injunctive relief;

8.     Grant all other relief as may be appropriate

Respectfully submitted,

WEBSTER& FREDRICKSON, PLLC

*/s/ Geoffrey H. Simpson*
Bruce A. Fredrickson, # 933044
Cedar P. Carlton, # 480255
Geoffrey H. Simpson, # 988437
1775 K Street, NW
Suite 600
Washington, DC 20006
Counsel for the Plaintiff

13

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury

Respectfully submitted,

WEBSTER& FREDRICKSON, PLLC

*/s/ Geoffrey H. Simpson*
Bruce A. Fredrickson, # 933044
Cedar P. Carlton, # 480255
Geoffrey H. Simpson, # 988437
1775 K Street, NW
Suite 600
Washington, DC 20006
Counsel for the Plaintiff

Filed
D.C. Superior Court
01/07/2016 11:35AM
Clerk of the Court



**Superior Court of the District of Columbia**
CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Robyn Slack
_____
Plaintiff

vs.                                                    Case Number    2015 CA 008900 B

Washington Area Metropolitan Transit Authority
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W. between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Geoffrey H. Simpson                                    _Clerk of the Court_
_____
Name of Plaintiff's Attorney

1775 K Street, NW, Suite 600                    By _____
_____                              Deputy Clerk
Address
Washington, DC 20006
_____

202-659-8510                                    Date    01/07/2016
_____
Telephone
如需翻译, 请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요         የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traduccion al español



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) dias contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

Por: _____

_____
Dirección                                     Subsecretario

Fecha _____

_____
Teléfono
如需要译，请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요      የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

ROBYN SLACK
    Vs.                                     C.A. No.       2015 CA 008900 B
WASHINGTON AREA METROPOLITAN TRANSIT AUTHORITY et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge JEANETTE J CLARK
Date:  November 17, 2015
Initial Conference: 9:30 am, Friday, February 19, 2016
Location:  Courtroom 221
            500 Indiana Avenue N.W.

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

## IN SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

ROBYN SLACK,                   )
                                     )
        Plaintiff,           )
                                     )     Civil Action No.: 2015 CA 008900 B
v.                             )     Judge Jeanette J. Clark
                                   )     Calendar 7

WASHINGTON METROPOLITAN   )
AREA TRANSIT AUTHORITY, *et al.*,  )
                                     )
        Defendants.       )
                                     )

## ORDER OF RECUSAL

I hereby recuse myself from **SLACK, ROBYN  Vs.  WASHINGTON AREA METROPOLITAN TRANSIT AUTHORITY et al.**, case number **2015 CA 008900 B**.

The Civil Clerk's Office stated that the case will be reassigned to Judge Ross, Calendar 6.

**WHEREFORE**, it is therefore this 25th day of November 2015, hereby,

**ORDERED**, that the case is returned to the Civil Clerk's office for reassignment and it is

**FURTHER ORDERED**, that the Initial Scheduling Conference scheduled for February 19, 2016 before Judge Clark shall be **VACATED.**

**SO ORDERED.**

*Jeanette J. Clark*
_____
**Judge Jeanette J. Clark**
**D.C. Superior Court**

**Copy e-filed, e-served, and docketed on this 25th day of November 2015:**

Geoffrey Simpson, Esq.
1775 K Street NW, Suite 600
Washington, DC 20006
    *Counsel for Plaintiff*

**Copy mailed:**

Washington Metropolitan Area Transit Authority
600 5th Street NW
Washington, DC 20001
    *Defendant*

Judy Mewborn
600 5th Street NW
Washington, DC 20001
    *Defendant*



# THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

**December 1, 2015**

CASE NAME:    ROBYN SLACK Vs. WASHINGTON AREA METROPOLITAN TRANSIT AUTHORITY et al

CASE NO.    2015 CA 008900 B

The above-captioned Civil Actions case has been scheduled for Scheduling Conference Hearing on the date and time shown below.   The attorneys and any party not represented by an attorney must appear before Judge MAURICE ROSS.

**HEARING DATE: Friday, February 19, 2016**
**TIME: 9:00 am**
**LOCATION:   500 Indiana Avenue N.W.**
                 **Courtroom 100**
                 **WASHINGTON, DC  20001**

**PLEASE BRING THIS NOTICE WITH YOU WHEN YOU APPEAR.**

Civil Division