**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ROBYN SLACK**, | |
| Plaintiff, | |
| v. | Case No. 1:16-cv-00130 (TNM) |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiff Robyn Slack lost her job at the Washington Metropolitan Area Transit

Authority, or WMATA, after refusing to act as the sole point of contact for a procurement

contract, which she believed would have violated the law.  She sued WMATA for unlawful

retaliation and her supervisor, Judy Mewborn, for defamation.  WMATA has moved to dismiss

two of Ms. Slack's retaliation claims, which arise under the False Claims Act and the District of

Columbia Whistleblower Protection Act.[1]  Because sovereign immunity bars these claims,

WMATA's Motion to Dismiss Counts I and III of the Complaint will be granted.

## I.      LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and so "possess only that power

authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

375, 377 (1994).  So a federal court must satisfy itself that it has jurisdiction over a claim before

proceeding to the merits and must dismiss any action over which it determines that it lacks

jurisdiction.  *Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007); *see also* Fed.

---

[1]  Ms. Slack's defamation claim and her retaliation claims under the American Recovery and Reinvestment Act and the National Defense Authorization Act are not at issue in WMATA's Motion to Dismiss.

R. Civ. P. 12(h)(3). On a motion to dismiss for lack of jurisdiction under Federal Rule of Civil

Procedure 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. *Georgiades v.*

*Martin-Trigona*, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984). A plaintiff may rely on facts outside

the pleadings to satisfy this burden, as "the court may consider the complaint supplemented by

undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus

the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C.

Cir. 1992).

## II.     ANALYSIS

The Eleventh Amendment generally prohibits a federal court from exercising jurisdiction

over claims against a state. U.S. Const. amend. XI ("The Judicial power of the United States

shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign

State."); *see also Bd. of Trs. of the Univ. of. Ala. v. Garrett*, 531 U.S. 356, 363 (2001)

("Although by its terms the Amendment applies only to suits against a State by citizens of

another State, our cases have extended the Amendment's applicability to suits by citizens against

their own States."). As Ms. Slack appears to concede, when Virginia, Maryland, and the District

of Columbia created WMATA, they conferred their sovereign immunity upon it. *Morris v.*

*WMATA*, 781 F.2d 218, 219-220 (D.C. Cir. 1986).[2]

But there are two primary exceptions to WMATA's Eleventh Amendment immunity.

*Barbour v. WMATA*, 374 F.3d 1161, 1163 (D.C. Cir. 2004). First, Congress may limit Eleventh

---

[2] WMATA focuses on the sovereign immunity conferred by Virginia and Maryland acting as states protected by the Eleventh Amendment. *See, e.g.*, Reply ISO Mot. Dismiss 5. Congress, acting on behalf of the District of Columbia, may have cloaked WMATA in the sovereign immunity of the United States as well. *See Morris*, 781 F.2d at 222.

Amendment immunity by statute if it "unequivocally expresse[s] its intent to abrogate that immunity" and acts within its constitutional authority. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). Second, a state may voluntarily waive its immunity by making a "clear declaration" that it intends to submit itself to a federal court's jurisdiction. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999). So the question that the Motion to Dismiss presents is whether Ms. Slack has shown an abrogation or waiver of WMATA's sovereign immunity from suit under the False Claims Act, or FCA, and under the District of Columbia Whistleblower Protection Act, or DCWPA.

### A. The FCA Does Not Abrogate Eleventh Amendment Immunity

Count III of Ms. Slack's Complaint alleges whistleblower retaliation in violation of the FCA and can proceed only if Ms. Slack shows that the FCA applies to WMATA. As noted above, Congress can only abrogate Eleventh Amendment immunity if it "unequivocally expresse[s] its intent to abrogate that immunity" and acts within its constitutional authority. *Kimel*, 528 U.S. at 73. Because "abrogation of sovereign immunity upsets the fundamental constitutional balance between the Federal Government and the States," courts apply a "stringent" test to claims of abrogation, requiring that Congress make its intention "unmistakably clear in the language of the statute." *Dellmuth v. Muth*, 491 U.S. 223, 227-28 (1989). A statute could satisfy this test by providing that the states "shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation." *See id.* at 229-30. But even a statute that anticipates suits against states and provides for suit in federal courts fails to satisfy this test if it "makes no reference whatsoever to either the Eleventh Amendment or the States' sovereign immunity." *See id.* at 231-32.

The FCA's whistleblower retaliation provision provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop [one] or more violations of this subchapter.

31 U.S.C. § 3730(h). Ms. Slack argues that this provision abrogates Eleventh Amendment immunity by authorizing lawsuits against employers that retaliate against whistleblowers without excluding employers that are state governmental entities. Opp. to Mot. Dismiss 6-12.[3] But WMATA challenges this view on two grounds.

*First*, WMATA argues that the FCA authorizes a lawsuit only against a legal person, which excludes any state agency. Memo. ISO Mot. Dismiss 6-8; Reply ISO Mot. Dismiss 8. According to WMATA, the Supreme Court has already decided this question by holding that state agencies are not persons liable to suit under the FCA's *qui tam* provision. *See Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 787 (2000). But the FCA has other provisions authorizing other types of lawsuits. Indeed, *Stevens* noted that another provision of the FCA that enables the Attorney General to issue civil investigative demands explicitly includes states within its ambit. *See id.* at 783-84. Unlike the text of the *qui tam* provision, nothing in the text of the whistleblower provision at issue here limits liability to legal persons. *Compare* 31 U.S.C. § 3730(b)(1) (authorizing *qui tam* lawsuits for violations of 31 U.S.C. § 3729, which establishes the liability of "any person" who performs a listed act) *with* 31 U.S.C. § 3730(h) (authorizing lawsuits for whistleblower retaliation without specifying who may be liable). WMATA's interpretation of the FCA lacks textual support and is at least in tension with

---

[3] As for the requirement that Congress act within its constitutional authority, Ms. Slack argues, and WMATA does not dispute, that the FCA falls within the scope of Congress's spending power. Opp. to Mot. Dismiss 11; *see also South Dakota v. Dole*, 483 U.S. 203, 206-07 (1987).

the only interpretation of the whistleblower provision by a federal court of appeals that the

parties have cited. *See Wilkins v. St. Louis Hous. Auth.*, 314 F.3d 927, 931-32 (8th Cir. 2002)

(holding that FCA's whistleblower provision applied to public employer).[4]

      *Second*, WMATA argues that, even if the FCA could apply to the states, it does not

unequivocally express an intent to abrogate sovereign immunity. Reply ISO Mot. Dismiss at 9-

11. WMATA is on the right track here. The FCA's whistleblower retaliation provision does not

reference the states' sovereign immunity under the Eleventh Amendment. 31 U.S.C. § 3730(h);

*see also United States v. Tex. Tech. Univ.*, 171 F.3d 279, 295 (5th Cir. 1999) (holding that the

Eleventh Amendment bars FCA whistleblower retaliation claim against public university);

*United States ex rel. King v. Univ. of Tex. Health Sci. Ctr.-Houston*, 907 F. Supp. 2d 846, 856

(S.D. Tex. 2012) (holding that the FCA's whistleblower retaliation provision "does not include a

clear statement stripping state sovereign immunity"); *United States ex rel. Moore v. Univ. of

Mich.*, 860 F. Supp. 400, 403-05 (E.D. Mich. 1994) (holding that the FCA's whistleblower

retaliation provision "is silent on the issue of Eleventh Amendment immunity").

      Although WMATA may logically fall within the FCA's scope because it is an employer

that could engage in whistleblower retaliation, this does not make the FCA a clear statement of

congressional intent to abrogate sovereign immunity. *See Dellmuth*, 491 U.S. at 232. Because

Congress did not clearly declare its intent to abrogate the states' sovereign immunity when it

passed the FCA, it has not conferred jurisdiction on the Court to hear Ms. Slack's FCA claim.

*See id.* at 231 (requiring textual reference to immunity).

---

[4] The public employer in *Wilkins* appears to have been one of those "lesser entities" that "is not
an arm of the State" and so lacks sovereign immunity. *See Alden v. Maine*, 527 U.S. 706, 756
(1999). *Wilkins* did not address sovereign immunity as a possible defense that a generally
immune public employer like WMATA might raise against whistleblower claims.

**B. WMATA Has Not Waived Sovereign Immunity from FCA Lawsuits by Receiving Federal Funds**

Although the FCA leaves WMATA's sovereign immunity intact, WMATA could waive that immunity by making a "clear declaration" of intent to submit itself to federal courts' jurisdiction. *See Barbour*, 374 F.3d at 1163. Like the test for congressional abrogation, the test for waiver is "a stringent one" that cannot be satisfied by implications but requires an unequivocal consent to suit. *Sossamon v. Texas*, 563 U.S. 277, 284 (2011). Courts narrowly construe the scope of any consent to suit. *Id.* at 285.

Congress can use its constitutional spending power to "elicit a clear declaration" of consent to suit from recipients of federal program funding, but only if Congress communicates "a clear intent to condition participation in the programs funded under [an] Act on a State's consent to waive its constitutional immunity." *Barbour*, 374 F.3d at 1163. For example, the Civil Rights Remedies Equalization Act provides, "A state shall not be immune under the Eleventh Amendment [from liability] for a violation of section 504 of the Rehabilitation Act of 1973 . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7(a)(1). By accepting federal transportation funds after Congress enacted this statute, WMATA waived its immunity from Rehabilitation Act claims. *Barbour*, 374 F.3d at 1170.

Ms. Slack argues that WMATA has similarly waived its sovereign immunity from FCA lawsuits by receiving federal funds. Opp. to Mot. Dismiss 12-15. But Ms. Slack does not show that Congress used its spending power to condition funding on a waiver of sovereign immunity as to FCA claims. Instead, Ms. Slack argues that the Federal Transit Authority, or FTA, conditioned funding on a contractual waiver. *See id.* at 13 ("This case involves another way WMATA manifested its intent to waive immunity: it entered into agreement to receive funds

6

from the FTA . . . ."). *Id.* at 13. Notably, Ms. Slack bears the burden of establishing the Court's

jurisdiction but cites no precedent to show that Congress can use its spending power to demand

that a state waive its Eleventh Amendment rights without the type of clear congressional

statement required by *Barbour*. She has not shown that Congress, by a silent, implicit delegation

of authority, can open the door for expansions of federal power that it otherwise could not have

accomplished without satisfying a stringent clear-statement rule. *Cf. FDA v. Brown &*

*Williamson Tobacco Corp.*, 529 US. 120, 160 (2000) (requiring clear textual commitment of

authority over significant question rather than accept vague and implicit delegation because

Congress does not "hide elephants in mouseholes").

Even if the FTA could exact a contractual waiver of sovereign immunity in exchange for

federal funds, none of the three alleged contractual waivers to which Ms. Slack points shows a

clear consent to third-party FCA lawsuits such as her own. *First*, Ms. Slack points to language in

the FTA Master Agreement requiring recipients of federal funds to comply with all applicable

federal laws and to acknowledge and agree to the applicability of federal laws on civil fraud.

Opp. to Mot. Dismiss 13-14. But there are at least three reasons this language does not authorize

this Court to take jurisdiction over Ms. Slack's FCA claim. The first reason is that an explicit

but general agreement to obey federal law is "a customary condition for any participation in a

federal program" and "can hardly be deemed an express waiver of Eleventh Amendment

immunity." *Fla. Dep't of Health and Rehabilitative Servs. v. Fla. Nursing Home Ass'n*, 450 U.S.

147, 150 (1981); *see also Sossamon*, 563 U.S. at 292 (questioning whether broad and general

language can constitute an unequivocal consent to liability under any specific statute). The

second reason is that WMATA's recognition of federal law and its applicability could easily

exclude FCA liability since federal law itself would not apply the FCA to WMATA. *See*

7

*Barbour*, 374 F.3d at 1163 (requiring clear declaration of consent to suit). The third reason is that nothing in WMATA's contract with the FTA unequivocally grants third parties like Ms. Slack a right to sue WMATA. *See Sossamon*, 563 U.S. at 284 (construing waivers narrowly).

*Second*, Ms. Slack points to language in the FTA Master Agreement requiring recipients of federal funds to "comply with applicable Federal civil rights laws," including "applicable Federal nondiscrimination laws," and warning recipients that remedies for civil rights violations could be enforced as provided by federal law. Opp. to Mot. Dismiss 14-15. These contractual provisions are too broad to constitute a clear consent to suit under the FCA, particularly since none of WMATA's enumerated civil rights obligations relate to discrimination based on whistleblower activity. *See Sossamon*, 563 U.S. at 292 (construing general words in light of specifically enumerated examples). And the contract's reference to applicable laws and the remedies they authorize does not make the FCA applicable to entities like WMATA that enjoy sovereign immunity. Finally, as noted above, WMATA's contract with the FTA does not clearly convey rights to third parties. So neither the civil rights provisions of the FTA Master Agreement nor the civil fraud provisions establishes waiver.

*Third*, Ms. Slack asserts that the FTA expects WMATA to comply with a 45-page list of federal laws including the FCA. Pl.'s Sur-Reply 2. But Ms. Slack supports this claim only by attaching a 45-page list of laws. Nothing in the record shows why the FTA would expect WMATA to comply with these laws, suggests that WMATA has consented to suit under these laws, or shows that WMATA's consent extends to third parties like Ms. Slack. This alleged contractual agreement, like the alleged waivers under the FTA Master Agreement, does not satisfy Ms. Slack's burden of establishing this Court's jurisdiction over her FCA claim.

Ms. Slack also argues that she has a right to discovery into other agreements between WMATA and the federal government that might include contractual waivers of immunity. Opp. to Mot. Dismiss 12, 15. But Ms. Slack has not alleged facts showing a good-faith belief that discovery will enable her to establish this Court's jurisdiction. Her mere speculation that discovery might reveal a contract that clearly creates a third-party right to sue WMATA under the FCA does not provide grounds for discovery. *See FC Inv. Grp. v. IFX Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008).

*        *        *

Because Congress did not abrogate WMATA's sovereign immunity by passing the FCA and because Ms. Slack has not shown that WMATA waived its immunity from private FCA claims by accepting federal funds, this Court lacks jurisdiction over Count I of her Complaint.

**C. Virginia and Maryland Have Not Waived Sovereign Immunity from DCWPA Lawsuits by Passing Their Own Whistleblower Protection Laws**

Count I of Ms. Slack's Complaint alleges whistleblower retaliation in violation of the DCWPA and can go forward only if Ms. Slack shows that Virginia and Maryland have consented to suits against WMATA under the DCWPA. States can make a clear declaration of consent to suit by enacting statutes that waive their immunity. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990). But courts find a waiver of immunity "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Id.* at 305.

In the context of an interstate compact like WMATA, "one signatory may not impose its legislative enactment upon the entity created by it without the express consent of the other signatories and of the Congress of the United States." *Lucero-Nelson v. WMATA*, 1 F. Supp. 2d 1, 7 (D.D.C. 1998); *see also C.T. Hellmuth & Assocs. v. WMATA*, 414 F. Supp. 408 (D. Md.

1976). For example, the signatories of an interstate compact can waive the compact's immunity by passing identical statutes providing that the states "consent to suits, actions or proceedings of any form or nature at law, in equity or otherwise" and providing for venue in "a judicial district, established . . . by the United States." *Feeney*, 495 U.S. at 306-07.

Ms. Slack argues that Virginia and Maryland have consented to suit under the DCWPA by passing whistleblower protection laws of their own. Opp. to Mot. Dismiss 16-24. To support this view, she points out that Virginia and Maryland law mirrors District of Columbia law in three ways. First, each jurisdiction prohibits employers from retaliating against whistleblowers. Va. Code § 2.2-3011(A)-(C); Md. State Personnel & Pensions Code § 5-305; D.C. Code § 2-223.02. Second, each jurisdiction provides whistleblowers who have suffered retaliation a cause of action that allows them to go to court and sue for reinstatement, back pay, and attorney's fees. Va. Code § 2.2-3011(D); Md. State Personnel & Pensions Code §§ 5-310(e), 5-311; D.C. Code §§ 2-223.03(a). Third, Ms. Slack argues, and WMATA does not dispute, that each jurisdiction recognizes WMATA as one of its instrumentalities and applies its whistleblower protection statutes to its instrumentalities. Opp. to Mot. Dismiss 19-22. Ms. Slack concludes that Virginia and Maryland have waived their immunity against whistleblower retaliation claims and, with it, WMATA's immunity against suit under the DCWPA. *Id.* at 23.

But this line of argument fails for at least two reasons. *First*, the DCWPA does not apply to WMATA by its own terms. The DCWPA states that it "shall apply to employees of the WMATA when the Commonwealth of Virginia and the State of Maryland enact similar provisions for WMATA whistleblowers." D.C. Code §§ 2-223.07. Ms. Slack argues that Virginia triggered this provision by enacting its Fraud and Abuse Whistle Blower Protection Act in 2009. Opp. to Mot. Dismiss 24. But Ms. Slack has not shown that Maryland has made any

10

relevant change to its whistleblower protection law since the DCWPA's enactment. Nor has she

shown that either Virginia or Maryland has a whistleblower statute "similar" to the DCWPA in

its provision "for WMATA whistleblowers." Unlike the DCWPA, which explicitly addresses

WMATA's liability for whistleblower retaliation consistent with the requirement that a statutory

waiver must be clear and unequivocal, Virginia and Maryland law is silent on WMATA's

liability. For both these reasons, Ms. Slack has failed to carry her burden of showing that the

DCWPA applies to WMATA.

*Second*, consent to suit under one whistleblower protection law is not consent to suit

under all whistleblower protection laws. Perhaps District law could apply to WMATA if

Virginia and Maryland had enacted identical statutes clearly consenting to suit. *See Feeney*, 495

U.S. at 306-07. But where each jurisdiction has enacted a different statute, the fact that the

statutes address the same subject matter only increases the likelihood that applying one

jurisdiction's laws to WMATA could upset the other jurisdictions' policy judgments. *See*

*Hellmuth*, 414 F. Supp. at 409-10 (holding that the Maryland Public Information Act did not

apply to WMATA although Virginia and the District of Columbia had enacted comparable

freedom of information laws).

A few examples will highlight the substantive differences between each jurisdiction's

law. First, each jurisdiction places different conditions on whistleblower protection. Va. Code

§ 2.2-3011(A)-(C) (protecting employees who make a disclosure in good faith); Md. State

Personnel & Pensions Code § 5-306 (excluding employees who make disclosures prohibited by

law—presumably Maryland and federal law—except if made to the Maryland Attorney General

under another Maryland statute); D.C. Code §§ 2-223.01(10) (protecting any employee who is

"perceived to have made a protected disclosure"). Second, each jurisdiction places different

11

conditions on access to court.  Va. Code § 2.2-3011(D) (permitting a whistleblower to sue

without exhausting administrative remedies); Md. State Personnel & Pensions Code § 5-310(e)

(requiring a whistleblower to exhaust administrative remedies before suing); D.C. Code §§ 2-

223.05 (requiring a whistleblower who sues in court to give up an administrative remedy).

Third, each jurisdiction provides different consequences for whistleblower retaliation.  Va. Code

§ 2.2-3011(D) (requiring civil penalty between $500 and $2,500); Md. State Personnel &

Pensions Code §§ 5-309(e), 5-311 (authorizing specific forms of relief for the plaintiff and "any

other appropriate relief" but not expressly contemplating any civil fine); D.C. Code §§ 2-

223.04(b) (providing for civil fine not to exceed $1,000).  Given these differences, Virginia and

Maryland's consent to suit under their own whistleblower laws falls far short of an express or

unavoidably implied consent to suit under the DCWPA.  *See Feeney*, 495 U.S. at 305.[5]

### D. The WMATA Compact Does Not Waive Sovereign Immunity from DCWPA Lawsuits

Ms. Slack argues that Virginia, Maryland, and the District of Columbia have made a clear

declaration of consent to suit by contractually waiving WMATA's immunity from whistleblower

retaliation claims.  Opp. to Mot. Dismiss 16-19.  But this argument depends on the idea that their

course of conduct has modified the WMATA Compact.  *Id.* at 17.  And the course of conduct to

which Ms. Slack points is "passing similar legislation."  *Id.* at 16; *see also id.* at 18.  The only

textual hook that Ms. Slack provides for her contract argument that could distinguish it from her

statutory waiver argument is a provision in the Compact allowing amendment by legislative

---

[5]  Given this conclusion, the Court need not determine whether Congress has consented to the application of the DCWPA to WMATA, although WMATA does not meaningfully contest Ms. Slack's argument that Congress manifested its acceptance of the DCWPA, including its provisions about WMATA, by approving the DCWPA under the Home Rule Act.  *See* Opp. to Mot. Dismiss 18 (arguing congressional consent); Reply ISO Mot. Dismiss 15 (summarily asserting that Congress has not consented without addressing the Home Rule Act).

action "concurred in by all the others." *See id* at 17-18.  But she has not shown how Virginia and Maryland concurred in the amendment to the WMATA Compact proposed by the DCWPA.  So Ms. Slack's contract argument merges with the statutory waiver argument and fails for the same reasons.

*     *     *

Other judges of this District have already held that the DCWPA does not apply to WMATA, including at least one decision rendered after Virginia allegedly triggered the DCWPA's application by passing its whistleblower protection statute.  *See Ndzerre v. WMATA*, 174 F. Supp. 3d 58, 64 (D.D.C. 2016) (holding that the DCWPA does not apply to WMATA); *Sampson v. WMATA*, 2005 WL 3276277 at *3 (D.D.C. Aug. 9, 2005) (same).  The Court agrees.

## III.    CONCLUSION

For the reasons stated above, WMATA's Motion to Dismiss Counts I and III of the Complaint will be granted.  A separate order will issue.

Dated: August 30, 2018                                TREVOR N. MCFADDEN, U.S.D.J